Case number 14-3447, Thomas Crangle v. Bennie Kelly. All arguments not to exceed 15 minutes per side. D. Bruce LaPierre supervising for Nicole Pelletier, arguing. Good morning. Good morning. Please, the court. I'm Bruce LaPierre. Mr. Walsh and I represent Thomas Crangle and Nicole Pelletier, a third-year student at Washington University Law School. We'll argue the case. So you had the hardest part today. All right. Well, thank you. Thank you for your help. And we're thrilled to hear from Mrs. Is it pronounced Pelletier? Pelletier. Pelletier. Okay. I bet it was originally Pelletier at one point. Yes. Good morning, and may it please the court. I would like to reserve three minutes for rebuttal. When Thomas Crangle pleaded guilty in 2007, the trial court and defense counsel both told him erroneously that his sentence would not include a five-year term of post-release control. More than three years later, Ohio courts added a five-year term of post-release control to his sentence. Mr. Crangle did not discover the error in his sentence, that his original sentence was too lenient, until the Ohio Supreme Court decided the Carnell case in 2010. So one thing that I've been scratching my head a little bit about is trying to understand the stakes of this difference. Okay. So the most important thing, obviously, is the sentence, which was pretty severe. And so the options are it could have been long sentence with parole, plus post-release control, or long sentence plus just post-release control. Are those the types of options? What were the actual stakes here? How does this hurt him? What's the way in which post-release control is so bad that it would even get him to say, I'd like to now be tried for a pretty lousy crime? Right. Well, we have evidence in the record that Mr. Crangle states that he would not have pleaded guilty in 2007. I'm actually asking, I'm trying to figure out the difference between post-release control and parole. What is so bad about this? Well, under Ohio law, post-release control is part of the maximum penalty. It is legally different from parole. Parole is a form of early release, where post-release control actually imposes an additional period of supervision. But parole is supervision. I mean, I think of parole as like what the federal courts call supervised release. You're free, but you have a probation officer, and you have some restrictions on what you can do. And it sounds like post-release control is similar, but I can't figure out, is it identical? Or if it's not identical, what's different? Right. Well, we're not sure exactly. We don't believe it's identical. Post-release control imposes severe sanctions for failing to comply. Supervised release is the same way. I see. If you violate parole, you could be brought back in and have your term, right? That's correct. And that's the same with post-release control. Additionally, if you violate post-release control, the maximum penalty under post-release control is to be imposed for half of your original sentence. So, I mean, the most compelling part of your argument is that something suddenly happened many years after the plea bargain and sentence. Yes. And that's a really compelling argument if your client didn't do anything because he was a beneficiary of what had originally happened. And what later happens, non-protonque, is quite hurtful. That really helps your claim in terms of equities as to why he didn't do anything earlier. But this just doesn't go anywhere if it's not something really different. In other words, you would agree with me if all they did is changed an A to a B and did it non-protonque but it didn't have any meaningful impact on your client. That would not be an explanation for getting out from under a plea bargain. So you have to make this a cognizable claim. You've got to show us how this post-release control hurt him. Right. And post-release control did hurt him. It's not just exchanging A for B here. Post-release control is added to the agreed-upon sentence as an additional penalty to parole. His sentence now is life with parole eligibility after 10 years plus the additional penalty of post-release control. What's the penalty? What does it mean to get post-release control on top of probation? I still can't figure that out. And that's something that I believe Ohio may have a better answer to, to understand exactly how post-release control applies in addition. We will ask them, but I mean, it's probably a good idea for you to have an answer to that as well. I understand, Your Honor. And it is a good point to note that Ohio courts and the Ohio legislature has gone through great lengths to be able to impose post-release control on crimes that are classified in the post-release control statute and through other statutes in the legislature to make sure that post-release control can be imposed nunk-pro-tunk. It seems very important to Ohio that this additional penalty of post-release control must be imposed when the crime is classified. Is the time frame part of the distinction that parole would have whatever the parole conditions were, but the post-release control is always five years? Yes. It's a mandatory time frame, and you don't have any understanding of how the control measures are distinguishable from what would be under normal parole? That's correct. Well, under normal parole, it seems that those control measures would be adopted by the parole board at the time he was released. However, as you're saying, Your Honor, post-release control for the specific crime that Mr. Kringle pleaded guilty to is a mandatory term of five years, something that is not to the discretion of the trial court or the parole board. And that's something that is specifically an additional penalty under Ohio law and that he specifically was told he would not be subject to when he pleaded guilty. Both his counsel and the court. That's correct. Both his counsel and the trial court told him he would not be subject to this exact additional penalty, and that was said without any objection by the prosecutor. He then submits that guilty plea based on that understanding, and then over three years later, Ohio courts add this additional penalty to his sentence. So one thing that you end up with in these situations where someone is trying to get out from under a plea bargain is the client hasn't really worked through the consequences of getting what they want. I take it you've talked to your client about this? Most people would plead to this type of crime. This is not a great, I don't know what Ohio jury you're going to get, but I wouldn't be optimistic. They're going to be very sympathetic to your client. Your client's worked through, because of this, so far as I understand it, pretty technical change. He's allowed to say whatever he would have done, and if he wins, he's stuck at that point. Now you have a trial, and you have the consequences if you lose. So he's worked through that cost-benefit analysis. That's correct, Your Honor, and I think it's not fair to assume that the only alternatives in this case were either he went to trial with the possibility of life without parole, or he pleaded guilty with the possibility of life with parole eligibility plus a period of post-release control. It's possible that some other combination of life with parole eligibility may have been available at the plea bargain stage. Or maybe now, or as your argument, maybe now because no one wants to retry it. Yes. As Judge Sutton's saying, he's betting on the come, and it may not be a good consequence. Right. Well, Your Honor, if this court grants the relief that we are seeking today, it is true that Mr. Kringle would have the opportunity either to enter a knowing, intelligent, and voluntary plea, which could— I'll tell you this. I don't think a court will accept a plea that contains these terms. Most judges will not be happy. They'll say we're being manipulated. So I think the odds are decent. There will be a trial. That's what I think will happen. I don't know this judge. I have no idea what they'll do, but I've seen this happen before, and then suddenly people come back with ineffective assistance claims against the person standing in your shoes because things got worse. Well, one consequence could be that your clients hoping that the prosecutrix—I guess it's a woman—would not show she's gone, and you don't have a witness. Of course, they could go back and try to do the trial transcript maybe, but anyway, that is a situation. They didn't have a trial, so I guess there's not a transcript anyway. But that's often the case from somebody who's practiced criminal law in the past. I know what happens. Yes, Your Honor. It's 10 years old, right? Right. And I would say the possibility that Ohio may not be able to put on as a sufficient trial as they would have at the time of Mr. Kringle's original plea is inherent in any habeas proceeding. That mere possibility cannot outweigh the facts that are clear on the record here that Mr. Kringle's constitutional rights were violated. I don't know that the attorney general prosecutor had this authority, but just out of curiosity, I take it—it seems to me the case has to go away— but I take it your client would agree that if they non-protunct this the other way, got rid of the post-release control, so it was just—who knows what he really thought, but it was entered—it stayed the way it was originally entered, which was to say sentence plus probation. I take it that would end the case. Yes, Your Honor. It's our understanding reading Ohio law that that is not an option, and we didn't specifically ask this court, a federal court, to require the state courts to not impose a mandatory penalty under state law, as that seemed to go against interests in federalism. However, yes— Well, that was really a question of whether the parties could negotiate that, and I realize where your position is, and the question is whether the attorney general has that power, the prosecutor has that power, and the state court has that power. Correct. And then to answer your original question, yes, our client would accept such relief from this court to have the— Give us your argument on the factual predicate. I understand that you argue that the error is the factual predicate, which was established by the, I guess, November 2010 non-protunct order. It seems to me under Johnson that it is that order, that November 2010 order, that is the factual predicate. Give us your analysis of what the factual predicate is. Yes, Your Honor. Well, the factual predicate we have here is the error in the sentence, and that is also analogous to Johnson, where the factual predicate was the error in the sentence, which underlied Johnson's constitutional claim. Here the factual predicate is the error in Mr. Kringle's sentence that his original— The original one? Yes, the original sentence was too lenient. But that's a—yeah. The way that this case has been litigated from your side, I don't quite understand. For what it's worth, you get to litigate it the way you want, but it's very funny to call an error that favors a defendant a cognizable error for any purposes. Defendants don't generally, and I would say aren't expected, to challenge errors that run in their favor. I would have thought the error was—is it November 10 when the non-protunct orders entered? Yes. I would have thought the error is then because, at least according to what your client says, he understood one thing, that thing happened, he pled based on that thing, and then that thing was disappeared in 2010. So I know that—it's hard to figure out exactly how you've argued this, but I would have thought that's the way it would be argued. Well, Your Honor, we did not argue that that non-protunct order is the factual predicate of Mr. Kringle's claim, because that order— Is this because of all the Ohio law and the magistrate's assessment of Sixth Circuit precedent on this point? Yes. And also we took the court's COA under the first 2244D1A that did not grant the COA on that issue to find that the court was not interested in holding the start date of Mr. Kringle's constitutional claim to trigger the period of limitations on that date of the non-protunct entry. You know, it leaves us with a very strange claim. Well, and I see my time has run up, Your Honor. May I address that issue? Yeah. Well, this strange— Particularly if you have an answer. Yes, I do. This strange claim here is, in fact, unique and actually shows the narrow scope of the case before this court. The factual predicate is the error in Mr. Kringle's sentence, because that fact is subject to proof or disproof. The non-protunct entry is not the factual predicate here. Instead, we have the error in a sentence, which was made discoverable by the court. There isn't—you have to admit there's no error in the original sentence. That's your whole point. It's the original sentence should have stayed. So there was no error in the original sentence. There was an error in the original— No, there was no error in the sentence, and there was no error in terms of understandings by your client. What your client thought would happen did happen. What makes your client unhappy is the rug was pulled out from under him in 2010. That's correct, Your Honor, but at the time that he entered—it's our understanding that at the time that he entered the plea agreement, his sentence was erroneous. That's how Ohio courts are able to add this non-protunct entry three years later. That saddles Mr. Kringle. But that's not an error you—that's not an error you want to correct. That's correct, Your Honor. I mean, we could spend all day trying to get something bad to happen to your client, but I'm pretty confident that's not what you're striving for. But, Your Honor, at the time when Mr. Kringle discovers this error in his sentence, he does what any responsible person would do would be to correct this error in his sentence, as opposed to gambling whether or not Ohio courts will or will not impose this additional penalty once he's released on parole. It does matter, even though that his original sentence is too lenient, and this is a very rare case, it still does matter because it does affect my client when he could have been saddled with the additional penalty of post-release control if he was released on parole, and then at that moment in time, he would have then had to sought relief in the state courts, and he likely, before even getting relief or being able to have his constitutional claims heard, the five-year term of the post-release control would have already been up. That's certainly for true in this case. When he started these proceedings in 2010, it's now 2016, if he had waited until the post-release control had actually been imposed, and he had not notified the courts himself, then he would have already served that term while challenging. Okay, so I think we understand your argument. You'll get your full rebuttal. We'll hear from the state, and then we'll hear from you again. Thank you. Thank you. May it please the Court, I'm Stephanie Watson for the warden here. The warden requests that the district court's decision dismissing the petition as time-barred should be affirmed. Specifically, Petitioner Krangel should not be entitled to a later start date under 2244 D1D because the factual predicate of the sentencing error was plain on the face of the record in the sentencing entry of 2007. But he had no incentive to challenge that. No, he didn't have any incentive to challenge it. But is there a case where we let a time-bar run when someone would be stupid to challenge it? I can't presume to. I am not aware of such a case. I can't presume to understand the logic of Mr. Krangel. What's his sentence at this point? What would you say his sentence is going to be? Forget the post-incarceration part of it. What does it really mean? Ten years' time at which time he can be eligible for parole release. And post-release control only comes in if you don't get parole, I guess. Is that the key? Well, not entirely. In such a case as Mr. Krangel's, the two can be served simultaneously. But your point is well taken with regard to the meaningful impact of whether or not this knowledge or not knowledge of subject to post-release control would actually have affected his decision to plead guilty when his parole is a life tail. So half of a life tail is still going to be a life. So it really, these are outstanding points that would no doubt defeat the prejudice prong of his involuntary guilty plea if he were ever to get to the merits. Are there different conditions relative, you know, the parole board can specify conditions, but mandatory five-year post-release control is a different animal, isn't it? Frankly, my understanding is that the differences, the significant differences are, as my co-counsel explained, post-release control is part of the original sentence that is imposed at the sentencing entry. And it can, if you violate those terms, add additional term to the sentence, as opposed to parole, which states an indefinite term that you will be on parole for the indefinite term of life. And you will, if you violate any of the terms of the parole, except by the parole authority, you can then be subject to serve the entire term of your sentence, which again is life. So just to make sure I'm getting this, there is a difference between probation and post-release control, but in this case, parole and post-release control, but in this case, there doesn't seem to be a difference. Correct. For meaningful impact. And again, I would subject to— Can I just say that that point cuts severely in both ways? In other words, on the one hand, it makes one really want to make sure his lawyer has talked to him about this, and that this is a highly technical argument that's being made. And yes, you can roll the dice, and maybe it will be hard to re-prosecute, but maybe things will get worse, which seems like they could with this. This sentence could have been a lot worse. But on the other hand, what I'm struggling with is why the government, given the concession earlier made, why the government wouldn't say, in this case, it really doesn't make a difference. Given this lawsuit, let's just undo the non-protonc order. In other words, I know the attorney general can't control that, but the attorney general can make a request. I mean, the attorney general can make a request to the state court saying there's litigation over this non-protonc. In this particular case, it doesn't seem to make any difference, and given the complexities of the litigation, we actually think the better thing to do is just to leave it as it was originally entered, even if that is not a legal—not normally compliant with Ohio law. I mean, the fact is a mistake was made initially. Everyone agrees with that. And given that there was a plea bargain allegedly made on the basis of the mistake— A couple points. Okay. First, when conditional writs are granted, that is when, generally speaking, the attorney general, the warden, informs the prosecutor of what's going on in the federal case, and they can ask for recommendations based upon our expertise and the knowledge of habeas, but it really is, as you acknowledged, a decision of a separate entity, the state prosecuting attorney. We don't have any prosecutorial power. I mean, why can't the—I agree with you. You can't either control the prosecutor or the state court. We can't. You can't make a request? No, no. We can't control them. So in a case such as this— But why not make the request? Because the request would need to be made when we're talking about the merits of the guilty plea claim, and we can't get to the merits of the guilty plea claim, whether or not that prejudiced his decision to plea or not, until we resolve this procedural aspect. And I have to disagree with the primary underlying contention that my opponent made, which is that he was not aware that he would be subjected to post-release control until 2010. That is simply erroneous. Page ID 92 of Record 8.1, which is his plea agreement, is very plain. It says, I have been informed that if I am imprisoned after my release, I will be supervised under post-release control, Revised Code 296728. Yeah, but so I understand that, and that seems like a powerful point for your side, and maybe it's even just a positive point, but I think you have to acknowledge that there's confusion, clear confusion going on. I mean, the hearing itself, you have the trial judge asking the same question I'm asking. No doubt. What's the difference? So no one seems to know exactly what's going on. He says, you know, it's in an affidavit or whatever. He says, presumably truthfully, this was outcome dispositive on whether I would have entered the guilty plea, which does seem suspect. I get it. But that's what he says, so now we're stuck. Well, it's a point that needs to be entertained if and when a court gets to the merits of the guilty plea, whether or not it was involuntary. The question is, can you avoid all this lengthy, all the lengthy discussions, all the problems with the law in Ohio, which in fact has, you know, from Lennon through Dresser through, you know, through the change in Carnell, clearly back and forth on the law. The question becomes, is there not a way to resolve it that would leave him with the parole that was initially given? Because I struggle to understand why Ohio would be so firm on being sure that post-control release or post-release control is always applied were it not distinguishable from the normal tenets of parole. There is a reason. It's not just length. There must be a reason for them to say, no, in these sorts of heinous crimes, we are going to have post-release control. It must mean something. I don't know what that is. I completely agree. In a case such as a rape of a young child under the age of ten, the statute that was cited in the agreement that he signed says that he will be supervised under this statute, the post-release control. It's heinous. That's a fact, but that's not the point. The point is that Ohio has decided that post-release control is significant and important and shall be imposed for particularly heinous crimes, as opposed to the tail for the rest of life of parole. So, obviously, there's a distinction either in the qualitative or quantitative control measures that are enacted. So the question becomes, can you resolve this by a request or an arrangement, a negotiation at this stage that would leave him with the life tail of parole? At this point, I would have to say no, because he agreed to plea to the statutorily mandated post-release control sentence. When he stood before the judge, the judge instructed him that there would not be post-release control. And that, you know, I struggle with saying there's a box check marked over here on a plea deal that you signed, and now you stand before the court and both the judge and your counsel say to you, that does not apply. But, Your Honor, that's exactly why the factual predicate was discoverable in 2007. Because he stood before the judge, the judge told him something other... This goes back to the hardest part of your side of the case. No one brings claims about mistakes that helped them, and no one's expected to do that. That's just not, there's just, there's no case law for that. So that means any time limit really does have to start in November 10. I just, I can't understand any other way. I mean, unless you're going to say this wasn't meaningful. But let me ask a different question back with the problem solving hat on, which I'd really appreciate if both sides would try to wear. We all the time invite relevant governmental entities to participate in cases. So we'll ask the Solicitor General's view about a case we have. Why is it that we couldn't ask the prosecutor their position on whether they'd be willing to solve the case simply by issuing the original order as a settlement of this particular litigation, which has just a lot of procedural hurdles in front of it right now. So we, of course, can do that. And the prosecutor can do what the prosecutor wants. I mean, I think you're suggesting don't be too optimistic. Maybe that's right, but I don't know why. I believe that I have to stand and protect the procedural nature of the deepest statute of limitations for this case and for its precedential value into future cases. And I could not in good conscience state that we're going to just forego our very strong, and I believe definitive statute of limitations argument in this case because it was clear and apparent on the record in 2007. And even if it weren't. The practical other side of that is if we feel that the November 2010 non-protonical order is in fact the factual predicate because it satisfies the law. I know you make a floodgates argument, but the truth is what the law says in this circumstance is that the factual predicate must occur from due diligence undertaken by the defendant and resulting in a legal alteration in his own case, all of which this petitioner satisfies. Your Honor, I would disagree and state that he's chosen the claim he wants to pursue. We can't choose the claim. He's chosen the claim. The sentencing error that he's claiming is the factual predicate for his claim occurred for his... Well, he's challenged the statute of limitations. The statute of limitations on the habeas is before us. We're going to look at the record, and we have the ability to say, no, I don't think that it was the sentencing error that was at issue here. It was the November 2010 order. And under that, it satisfies the law in your state and satisfies the statute of limitations because it falls within the 365 days. Two points. To continue what I was attempting to answer your question, the Hernandez case came out in 2009. The Hernandez case was cited to and followed by the Carnell case. So if you're going to look at the Carnell case as the time he could appreciate the legal significance of the factual predicate, it didn't happen in 2010. But don't you run the risk? We don't know whether he had Hernandez in the public record. Just to get to what I think is the real point, you acknowledge you do not have a case, any case, where the Edpus statute of limitations started running from a judgment that had a mistake that benefited the criminal defendant. I can't think of any. No, and I don't know that case either. So it turns out I don't think that's the law. So that means we're going to pick another date. I don't know what it is. I'm not sure how we're going to do it, but I don't think we're going to pick that date. I don't understand how we can pick a date where it would have been foolish for the criminal defendant to raise an argument that if he won, it would only help him. So here's what I'm trying to get you to do though. Just assume that's the lay of the land. What do you say then? What do we do then if we think it's not appropriate under AEDPA because we can't find a case under AEDPA that says the statute starts running from the original judgment? What do we do at that point? Just help us out with what we do. I can't answer your question without answering it with you have to follow the statute and the factual predicate for when his claim is that his plea was involuntary. Your view is forget the precedent. The text of the statute takes care of it? Yes. The text of the statute is our primary argument. I got it. I got it. But let's just say for the sake of argument, there's not two votes for that, just for the sake of argument. What do we do then? Is the case over? They win at that point? Or what do we do then? No. Again, I say if you're going to look at a different start date, you can't go all the way to 2010. The next start date has to be at the clerk or at worst for us, the Hernandez case, which was in 2009. I'm trying to ask a slightly different question. Just for the sake of argument, call it the most lawless decision ever. Okay. I'll try. We think the text of the statute and precedent doesn't permit the limitations period to run, start running until November 2010. Just say that's the way it is for the sake of argument. What happens to the State's position at that point? What do you say then? We would have to calculate the time limitation if he could not have the statute. Because he does file within a year of November 2010. And we would have to remand the case back to the district court for a determination of all the other procedural grounds, including procedural default, which these claims clearly are, and he would have to overcome cause and prejudice, which he cannot do, in order then to get to just the merits of his involuntary unknowing plea claim,  he cannot legitimately say, I would not have pleaded guilty to this ridiculously sweet deal that took a violent sexual offender specification of young children under the age of 10, multiple, off the table, that took a kidnapping charge off the table, that took life without parole off the table, and gave him a 10-year sentence with the possibility of parole of life after 10 years. He cannot, in our opinion, legitimately satisfy the prejudice prong that I would not have pleaded guilty if I really believed that I was going to be subjected to five years simultaneous to my life parole. It just isn't going to happen. That's very powerful, so I think we understand it. I thank you, and we request you affirm. Thank you. So, Ms. Paltier, yeah. Thank you, Your Honor. Just two brief points. First, we would like to be clear that we are happy to consider the non-pro-tunk entry in November 2010 as the factual predicate. Well, no shock there. Yes. And we ask that this court were to reconsider the COA. We would be happy to also stop and reconvene. Yeah, so one thing I would really urge you to do, I must say I'm very sympathetic to the point the Attorney General just made. I didn't realize how sympathetic I was until I heard her say everything she just said. There's going to be some very angry people if you win, and he's not willing to go through with this. So I urge some conversations, including the supervisor, with the client, and we'd like a communication from you that this is what he wants. Because the technicality of this cuts both ways, and it frankly seems from where I sit bizarre that he would undo this plea deal for something that it will not benefit him at all. So we'd like to hear that this is what he needs. The whole point of this is not knowing what was going on. I'd like knowledge, and I'd like a communication that this is what he wants to do. Because we're not going to go through all of this if that's not what he wants to do and he wants to roll the dice. So I think that's fair. Okay, Your Honor, we'll provide that. And that leads into the second point that I just want to be clear that Judge Strange is absolutely correct in saying that post-release control and parole are different. Ohio courts even have stated that they think there is a difference. How would it be different here if he's got life parole? Well, in this situation, if he's released on parole, the additional penalties in post-release control apply in addition to the parole penalties. We get this language directly from the Ohio Supreme Court in the Carnell case where the defendant had imposed post-release control. For the most five years, right? Correct. This is for life, potentially. That's correct. But the sanctions of post-release control are, if a defendant is subject to parole provisions, the Ohio Supreme Court has said that post-release control applies additional penalties in addition to parole. I'm convinced you're right in the abstract. And I think Judge Strange is right. And I think the State acknowledged in the abstract you're right. The question is what does that mean here given this parole term? And that seems to me to swallow this all up, which has me really baffled. The second question is are the post-release control provisions more onerous so that it is a greater likelihood that he will offend and be placed back in prison for the rest of his life? Isn't that the question? And isn't that why for the more heinous crimes the State has said you're going on post-release control because we are going to control you more than if? What's the answer? The answer to that is post-release control does apply very onerous sanctions. There are residential sanctions, non-residential. But is it an issue to violate post-release control? You're getting to the provisions. This is the issue. Yes. Does it say here's where you're going to live. Here's where you're going to report. You can't have a computer. You can't have a cell phone. Are those different from the normal parole provisions such that he's more likely to violate and be thrown back in for the rest of his life? Well, it seems if parole and the post-release control sanctions are applied to Mr. Krangel at the same time, then he has more sanctions. And inherently he'll be more likely to violate if there are more requirements under post-release control in addition to parole. So when you say more requirements, there are more things he could violate? Yes, that's correct. And the consequences of the violations are worse than probation violations? So you're making both points? In this case. Yes. It seems if there are more sanctions that can be imposed with post-release control, yes. And I am... You said if. I'm asking. I'm sorry, yes. I just want to know which time period. To your first question, yes. To your first question, yes. If there are more requirements that can be violated, the violations can lead to greater, longer sentences when it comes to probation violations. Is that what you're making? The point... I'm not exactly sure on parole, if violation of parole... Violation of parole would not lead to an additional sentencing. Violation of parole would put him back in imprisonment for the original sentence. Post-release control applies a more onerous imprisonment because violation of post-release control applies an additional period of imprisonment for a maximum... It can serve much more than a life sentence, can it? That's correct, Your Honor. If your parole lives on. That's correct, Your Honor. But it does make it more possible with both parole and post-release control applied, if he is released, to violate a sentence. Is there any question on how you violate it and what kind of a hearing you have? In the federal system, parole hearings are just informal. But a supervised release has to be in front of a judge. Is that similar to the OHOP plan? I do not know the answer to that, Your Honor. Okay. I think what we'll do is hear from you. Let us know what your communications with your client, which actually, from this argument, makes it sound like if the lawyers don't entirely know all this, surely the client doesn't entirely know all this. So as you figure out how these differences apply to this sentence and this client, that might be helpful to then let us know whether he still is going to bring this claim. And if you want to tell us in a supplemental filing how these are different, we'll be all ears. And then, of course, at that point, we let the state respond. And I think that's the way to do it. You can respond at that point. Yeah, I'd rather do it then. Yeah, thank you. So thank you.  Thank you.